Edward M. BABINEC and Martha Babinec, Appellants,

v.

STATE of Alaska, Appellee.

STATE of Alaska, Cross-Appellant,

v.

Edward M. BABINEC and Martha Babinec, Cross-Appellees.

Nos. 3108 and 3109.

Supreme Court of Alaska.

Nov. 24, 1978.

Timothy M. Lynch, Abbott, Lynch, Farney & Rodey, Anchorage, for appellants.

Gary W. Vancil, Asst. Atty. Gen., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, Richard Richards, Richards, Watson, Dreyfuss & Gershon, Los Angeles, Cal., Special Counsel for the State of Alaska, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

MATTHEWS, Justice.

This condemnation case is before us for the second time. The facts are stated in our first opinion, *Babinec v. State,* 512 P.2d 563 (Alaska 1973), and will not be repeated here. We held there that the trial court had erred in instructing the jury that for evaluation purposes only one parcel of land was involved, rather than two as the property owners' experts had contended, and reversed for a new trial.

Upon re-trial the jury awarded the property owners $113,625.[1] They appeal, claiming errors concerning evidentiary rulings and instructions to the jury, and asserting that the verdict is against the weight of the evidence. The state has cross-appealed from the trial court's refusal to award it interest on the difference between the amount it deposited at the beginning of this case, $190,750, and the verdict.

Our review of the record of the second trial shows that again the pivotal issue for the jury in its determination of just compensation was whether the property should be appraised as a single tract or as two tracts which had different values. Coffin, the property owners' expert, testified that the property should be evaluated as two tracts, since one portion had already been subdivided and retained a higher value per acre than the remainder of the property. Accordingly, he assigned a much higher value per acre to State Parcel A–345, which was taken from the subdivided portion, than he assigned to State Parcel A–348, which was taken from the unsubdivided portion of the property.[2] Conversely, both of the state's expert witnesses testified that they had appraised the property as a single tract and had assigned uniform values per acre to State Parcels A–345 and A–348.[3]

During cross-examination of Arnold, one of the state's experts, the property owners' attorney brought out the fact that Arnold had submitted a prior appraisal to the state in which he had arrived at a different figure for just compensation. When counsel attempted to elicit the dollar value[4] of Arnold's prior appraisal, the state's attorney objected.

The court entertained argument on this matter out of the presence of the jury. The state contended that state officials had required Arnold to use the two parcel technique in the earlier appraisal, that he had done so but had questioned its propriety, and that therefore admission of the appraisal would be "peripheral and confusing and . . . prejudicial." The court ruled that the prior appraisal was "collateral" and prohibited further inquiry concerning it.

The scope of cross-examination of an expert who has testified to the value of

---

1. The prior award was $110,000.

2. Coffin gave a figure of $282,000 for total just compensation, including damages. He stated he had estimated just compensation to be within a range of $230,000–$280,000 in the preliminary "Summary of Valuation" report which he had submitted to the property owners' attorney prior to trial.

3. One of the state's experts, Arnold, testified to a $91,000 figure; the other state appraiser, Hoefer, testified that just compensation was $113,650.

4. Arnold's original estimate was $179,100.

land in an eminent domain proceeding is very broad since cross-examination of the expert witness is the primary protection which an opposing party has against unwarranted estimates.[5] We have encouraged "liberal, flexible, thorough examination" in these types of proceedings to aid the trier of fact in determining the best estimate of value.[6] On the other hand, we have also stated that the trial court may in its discretion exclude relevant evidence if it finds its probative value is outweighed by the risk that it will have a prejudicial effect on the jury, confuse the issues, or mislead the jury.[7] The standard for appellate review of a lower court's decision to exclude testimony is whether it committed a clear abuse of discretion.[8]

In similar factual situations, other courts have held that as a matter of course an expert witness in a condemnation action may be examined with respect to a prior appraisal he has made of the subject property[9] or of similar properties[10] including the dollar value[11] he earlier assigned to them. One court has held that a trial court's ruling barring cross-examination of a state's expert witness as to the dollar value of the subject property which he had submitted three years before trial operated unduly to restrict the cross-examination and constituted prejudicial error.[12]

The determination of just compensation in this case depended in substantial part on the jury's choice of a valuation theory. We ruled in our first opinion that the property owners' two parcel theory was entitled to jury consideration. Arnold's first appraisal was evidently based on a similar theory. The fact that state officials had initially thought that method to be proper was itself relevant. Moreover, the amount arrived at by Arnold when using that technique was relevant, because the jury was entitled to accept the validity of the technique and reject the amount arrived at through its use by the property owners' appraiser. The prior appraisal also could have direct discrediting value, because the explanation for the inconsistency between the two appraisals need not have been believed by the jury.[13] Since these uses of the first appraisal are relevant to issues in the case and may be relevant to the discrediting of the witness, they cannot be regarded as collateral.[14]

**5.** E. Cleary, McCormick on Evidence § 35 (2d ed. 1972); J. Sackman, 5 Nichols' The Law of Eminent Domain § 18.45(2) at 18.219–18.230 (1976). (All courts will permit impeachment of an expert by showing a previous expression by the witness of an inconsistent opinion).

**6.** *Dash v. State,* 491 P.2d 1069, 1076–77 (Alaska 1971).

**7.** *Burgess Construction Co. v. Hancock,* 514 P.2d 236, 237 (Alaska 1973).

**8.** *Davis v. Chism,* 513 P.2d 475, 479 (Alaska 1973); Alaska R.Civ.P. 43(b).

**9.** *People v. Murata,* 161 Cal.App.2d 369, 326 P.2d 947, 954 (1958); *City of Renton v. Scott Pacific Terminal, Inc.,* 9 Wash.App. 364, 512 P.2d 1137, 1140 (1973).

**10.** *14.098 Acres v. Board of Education of Claymont,* 265 A.2d 36, 39 (Del.1970); *State ex rel. Symms v. Cole Fire Protection District,* 92 Idaho 810, 451 P.2d 1011, 1013 (1969).

**11.** *14.098 Acres v. Board of Education of Claymont, supra* note 10 at 39; *People v. Murata, supra* note 9, 161 Cal.App.2d 369, 326 P.2d at 954.

**12.** *People v. Murata, supra* note 9, 161 Cal. App.2d 369, 326 P.2d at 954.

**13.** *Cf.* Alaska R.Civ.P. 43(g)(11)[c]
*Prior Inconsistent Statements.*
A witness may be impeached by evidence that he has made at other times statements inconsistent with his present testimony. The statements must first be related to him, with the circumstances of times, places, and persons present, and the witness shall be asked whether he has made such statements and, if so, shall be allowed to explain them. If the statements are in writing, they shall be shown to the witness before he is asked any question concerning them.

**14.** Facts will be considered non-collateral, and hence open to impeachment, if one of two tests is satisfied: the facts are relevant to substantive issues in the case or are independently provable by extrinsic evidence, apart from the contradiction, to impeach or disqualify the witness.
*People v. Watkins,* 23 Ill.App.3d 1054, 320 N.E.2d 59, 64 (1974); *see* 3A Wigmore, Evidence § 1004, p. 965 (Chadbourne rev. 1970).

■ The state argues that any error committed in excluding the first appraisal was harmless because the appraisal was presented to the jury at the first trial and the verdict reached then was substantially the same as that reached at the second trial. We do not accept this argument because the jury in the first trial was instructed that the two parcel method, like that on which Arnold's first appraisal was based, was inappropriate as a matter of law.

For these reasons we hold that the trial court committed reversible error in restricting cross-examination as to Arnold's first appraisal. Our disposition of this issue makes it unnecessary to discuss the other issues raised by appellant other than to note that we have reviewed all of them and find no error. Since there must be a new trial the state's cross-appeal is moot, and we intimate no opinion on the issue there raised.

REVERSED and REMANDED.

BOOCHEVER, Chief Justice, dissenting.

The fact of the earlier appraisal made by witness Arnold was in evidence. The court prohibited introduction of the values given by Arnold on the earlier appraisal. I agree that this was error, but I believe that it was harmless error.

Counsel made no effort to pursue the matter after the initial objection was ruled on. He could have sought to introduce evidence that Arnold initially attempted to evaluate the property on the basis of two separate parcels. Arnold in his voir dire gave the reasons why he thought this was an improper method of evaluation. He contended that it was unrealistic to treat the two parcels as separately owned since one parcel might be entitled to substantial severance damages because of loss of access when, in reality, access was available

through the other parcel. Arnold had been instructed to consider the two parcels as separately owned for purposes of his earlier appraisal, but at the time of that appraisal, he objected to that assumption.[1]

Arnold's reasons present valid considerations which are not in conflict with the earlier *Babinec* opinion. *See Babinec v. State*, 512 P.2d 563 (Alaska 1973). In the earlier opinion, we said that the court had erred in failing to allow the property owners' witnesses to testify as to value based on a breakdown of the property as separate parcels. This was not meant to include a right to severance damages for one parcel when no such damages would exist when the other parcel was considered.[2] The reason for allowing the testimony as to the two parcels was because one portion of the property had been subdivided and had a substantially higher value than the other portion of the property. We stated:

> Since the proportion of the property taken in the subdivided section to the total property taken was much higher than the proportion of the entire subdivided acreage to the total acreage, *an evaluation based on average acreage value for the entire property taken results in a substantially lower sum than if the parcels are evaluated separately.*

512 P.2d at 568 (emphasis added). Arnold's reason for not assuming separate ownership of the two parcels was the severance damage problem, a justifiable reason.

If the court had permitted the evidence as to the values of the initial appraisal by Arnold, I believe that his explanation as to why he did not approve of the method used would substantially have weakened any effect on the jury.

Moreover, it seems significant to me that the jury did not follow Arnold's evaluation.

1. Mr. Arnold testified on voir dire:
   > I was told to ignore the ownership of Mr. Babinec as it lay east of the Chapman Parcel. . . . I could not visualize or utilize what was actual fact. . . . They imposed upon me by this instruction the totally spurious situation that did not conform to fact . . . .

2. In fact, we explicitly observed:
   > The arguments presented were somewhat confusing in failing to distinguish between parcelization problems involving severance damages and issues pertaining to units of valuation not necessarily related to severance damages.
   > *Babinec v. State*, 512 P.2d at 567.

The jury seemed to rely on the state witness Hoefer's evaluation because it returned a verdict in almost the exact amount of his evaluation. It is difficult for me to see how the additional testimony of Arnold could have affected the jury's evaluation.

There have now been two lengthy trials of this case. A party is entitled to a fair trial but not a perfect one.[3] I would affirm the judgment of the superior court.

**3.** *Sidney v. State,* 468 P.2d 960, 963 (Alaska 1970), *quoting Bruton v. United States,* 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476, 484–85 (1968).